Unified Judicial System

 

 
 Homestatek Mining Company Appellant, v.
South Dakota Subsequent Injury Fund, and South Dakota
Department of Commerce, Division of Insurance. Appellee. [2002 SD 46]
South Dakota Supreme Court
Appeal from the Circuit Court of The Sixth Judicial Circuit
Hughes County, South Dakota
Hon. Steven L. Zinter, Judge
Brad P. Gordon of Fuller, Tellinghuisen, Gordon and Perce, P.C. Spearfish, South Dakota
Attorneys for appellant.
 
Naomi R. Cromwell Division Counsel and Special Assistant Attorney General Pierre, South Dakota 
and
Robert C. Riter of Riter, Mayer, Hofer, Wattier & Brown Pierre, South Dakota
Attorneys for appellee,
 Mark F. Marshall of Davenport, Evans, Hurwitz & Smith Sioux Falls, South Dakota
Amicus curiae.
 
Argued February 13, 2002
Opinion Filed 4/24/2002
#21977
 MILLER, Retired Justice, Acting By Appointment.
 
ACTION
[Â¶1.] Homestake Mining Co. appeals from a declaratory judgment holding it was not entitled to reimbursement from the stateâs Subsequent Injury Fund for certain workersâ compensation claims.  We affirm and hold that SDCL 62-4-34.1 provided the applicable statute of limitations for Homestake to file its claims against the Fund and that a subsequent amendment of SDCL 62-4-34.7 could not revive Homestakeâs claims after the limitations period had expired and Homestake had failed to file its claims within that limitations period.  
FACTS AND PROCEDURE
[Â¶2.] In the spring of 1999, when Homestake had pending workersâ compensation claims for three of its employees, it learned of the possible repeal of SDCL 62-4-34.1 setting the limitations period for filing claims against the stateâs Subsequent Injury Fund.[1]   This statute required that claims against the Fund be filed with the South Dakota Division of Insurance within ninety days of either a final decision by the South Dakota Department of Labor that a compensable injury existed or approval by the Department of a settlement between the parties.  (This statute was then repealed, effective July 1, 1999, by Session Law 1999, ch 262, 
Â§ 3.).  Although none of the three claims had been adjudicated or settled, on or before June 30, 1999 Homestake filed all three claims with the Division of Insurance.  
[Â¶3.] The Division dismissed the three claims as untimely because of their premature filing, since no final decision on their compensability or settlement had been made by the Department.  (Subsequently, the claims were adjudicated or settlement approved on November 8, 1999, March 30, 2000, and October 3, 2000.  However, Homestake filed no further claim against the Fund in regard to any of the three claims.).
[Â¶4.] Homestake appealed the Divisionâs denial of these three claims to the Department.  The Fund filed a motion for dismissal based on the untimely filing pursuant to SDCL 62-4-34.1 which had been in effect prior to July 1, 1999, and claiming continuing effect of the former version of SDCL 62-4-34.7 (amended in 2001).
[Â¶5.] At a hearing before the Department, Homestake argued that the former version of SDCL 62-4-34.7, repealing the subsequent injury fund and 
applied retrospectively, violated its right to due process under the Fourteenth 
Amendment to the United States Constitution.  The Department ruled that it did not have subject matter jurisdiction to consider the constitutional issue and ordered the claims dismissed as untimely filed.
[Â¶6.] Homestake appealed to the circuit court which ruled that the injuries, having occurred prior to repeal of SDCL 62-4-34.1, vested Homestakeâs rights to make a claim against the Fund.  The court further ruled that the provisions of the former SDCL 62-4-34.7 and 62-4-34.1 worked to unconstitutionally deprive Homestake of its right to file a claim for reimbursement from the Fund.  Prior to entry of its order, the court learned that Homestake failed to provide written notice to the Department of its appeal as required by SDCL 1-26-31, which governs appeals from administrative agency decisions.  The court dismissed on that basis and Homestake appealed the dismissal to this Court (docket #21845).
[Â¶7.] Even prior to entry of the circuit courtâs ruling in the administrative agency action, Homestake commenced the declaratory judgment action that underlies this appeal.  Approximately one month later, it filed a motion for summary judgment asking the court to reiterate its prior ruling regarding its vested rights and the unconstitutional deprivation thereof.  Fund filed a motion for a continuance, stating it had not had the opportunity to complete discovery.  Following a telephonic hearing, the court granted the motion for continuance and instructed that Homestakeâs motion for summary judgment would be considered at a later time.  
[Â¶8.] Prior to consideration of the motion for summary judgment, Homestake became aware of additional legislative action in the 2001 Legislature (House Bill 1208) which it believed would revive the subsequent injury fund for injuries occurring before July 1, 2001.[2]   It amended its motion for summary judgment to add House Bill 1208 as additional legal grounds for a ruling in its favor.  Fund objected, maintaining Homestakeâs claims had not been timely filed.  It argued that the claims were properly dismissed by the Division of Insurance, and that Homestake had failed to provide further timely notice of the claims against the Fund under the former SDCL 62-4-34.1 after the claims had been adjudicated or settlement approved.
[Â¶9.] The parties appeared before the circuit court on Homestakeâs motion for summary judgment on April 3, 2001.  The court reiterated its earlier ruling that Homestake had been unconstitutionally deprived of its vested rights by the former version of SDCL 62-4-34.7 in conjunction with 62-4-34.1.  However, it agreed with Fund that Homestake had failed to make a timely claim of its subsequent injury fund claims following their adjudication or approval and it entered judgment April 12, 2001.  Subsequently, Homestake withdrew its appeal with this Court from the administrative agency decision (docket #21845).  It then filed this appeal from the declaratory judgment on June 14, 2001.
[Â¶10.] On September 12, 2001, while this appeal was pending, Homestake filed a motion with the circuit court pursuant to SDCL 15-6-15(a) seeking leave to amend its complaint for declaratory judgment.  The circuit court denied the motion for lack of jurisdiction.
[Â¶11.] Homestake appeals raising the following issues:
1.Whether application of SDCL 62-4-34.7, effective July 1, 2001, violates the prohibition against retroactive revival of Homestakeâs claims against the Fund.
 
2. Whether Homestake has substantially complied with the notice requirements of former SDCL 62-4-34.1.
 
3.Whether the doctrine of equitable tolling is applicable.
 
4.Whether the circuit court abused its discretion when denying Homestakeâs motion to amend its complaint for declaratory judgment.
 
Upon proper motion to this Court, Dakota Truck Underwriters was granted permission to file an amicus curiae brief.
STANDARD OF REVIEW
[Â¶12.] This case turns on the application of the statute of limitations and interpretation of the effect of a statutory amendment, both questions of law.  Questions of law are reviewed de novo with no deference given to the conclusions of law of the circuit court.  South Dakota Subsequent Injury Fund, 1999 SD 159 at Â¶7, 603 NW2d at 529 (citing Dahn v. Trownsell, 1998 SD 36, Â¶14, 576 NW2d 535, 539).
ANALYSIS AND DECISION
[Â¶13.] For reasons that will become obvious, we address Homestakeâs issues in reverse order.
[Â¶14.] 1.       Whether the circuit court abused its discretion when denying Homestakeâs motion to amend its complaint for declaratory judgment.
 
[Â¶15.] Homestake asserts its right to amend its complaint under authority of SDCL 15-6-15(a), which provides:
A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has neither been placed upon the trial calendar, nor an order made setting a date for trial, he may so amend it at any time within twenty days after it is served.  Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.  (emphasis added).
 
[Â¶16.] Homestake filed its motion to amend not only after the circuit court had entered its judgment, but also after it filed its appeal with this Court.  It is settled law that after this appeal was filed, the circuit court lacked jurisdiction to consider Homestakeâs motion.  Cutler-Christians v. Christians, 2001 SD 104, Â¶9, 633 NW2d 176, 178; Ryken v. Ryken, 440 NW2d 307, 308 (SD 1989) (âAn appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order except as to certain trivial matters; the Supreme Court then has jurisdiction until determination of the appeal.â); In re D.H., 354 NW2d 185, 192 (SD 1984).  Thus the circuit court properly denied the motion for lack of jurisdiction.
[Â¶17.] 2.       Equitable tolling and substantial compliance.
[Â¶18.] Homestakeâs issues regarding equitable tolling and substantial compliance were first raised in its motion to amend its complaint, discussed above.  As such, they were not properly before the circuit court.  We will not decide issues the circuit court has not had the opportunity to rule on.  Klinker v. Beach, 1996 SD 56, Â¶17 n3, 547 NW2d 572, 576 n3; Hawkins v. Peterson, 474 NW2d 90, 95 (SD 1991); Schull Constr. Co. v. Koenig, 80 SD 224, 229, 121 NW2d 559, 561 (1963) (applying the rule to review of declaratory judgment). 
[Â¶19.] 3.Whether application of SDCL 62-4-34.7 effective July 1, 2001, violates the prohibition against retroactive revival of Homestakeâs claims against the Fund.
 
[Â¶20.] Although this issue was also part of Homestakeâs motion to amend its complaint filed after this appeal was filed, it was first raised in Homestakeâs amended motion for summary judgment when it asked the court to determine whether then-House Bill 1208 was applicable to its claims.  As previously noted, see footnote 2 supra, House Bill 1208 was enacted into law as SDCL 62-4-34.7, effective July 1, 2001. 
[Â¶21.] Under our workersâ compensation statutes, Homestakeâs right to make these claims against the Fund vested at the time of the injuries.  Gordon v. St. Maryâs Healthcare Center, 2000 SD 130, Â¶19, 617 NW2d 151, 156; Salmon v. Denhart Elevators, 72 SD 110, 118, 30 NW2d 644, 648 (1948).
Rights and obligations of an interested party under the Workmenâs Compensation Law become vested at the date of a compensable accident, unless death results.  Until such time as an accident occurs the legislature may change the scale of weekly or other benefits, but to make such a change after the accident occurs would impair the obligations of contracts.
 
Id.; see South Dakota Subsequent Injury Fund, 1999 SD 159 at Â¶14, 603 NW2d at 530 (observing that the South Dakota Subsequent Injury Fund was created under our workersâ compensation laws).
[Â¶22.] The law in effect at the time of the injuries was SDCL 62-4-34.1.  It then provided:
Any claim against the subsequent injury fund shall be filed with the division of insurance within ninety days from the date of the final decision by the department that a compensable injury exists resulting in additional permanent partial or permanent total disability, or approval by the department of settlement between the parties.  No claim may be filed prior to a decision or approval of settlement from the department.  The division shall conduct an investigation and make a decision on the claim within thirty days of the filing of a complete claim as set forth in Â§ 62-4-34.4 or within a time agreed upon between the claimant and the department.  (emphasis added).
 
There is no dispute the claims filed on or before June 30, 1999 by Homestake were filed prematurely.  SDCL 62-4-34.1 employed the mandatory language âshallâ and these claims were not adjudicated or settlement approved until November 8, 1999, March 30, 2000, and October 3, 2000.  The statute expressly provided that â[n]o claim may be filed prior to a decision or approval of settlement from the department.â  As previously noted, this statute was repealed, effective July 1, 1999. Homestake conceded to the circuit court that nothing precluded it from filing its claims against the Fund within the ninety-day period after they were adjudicated or settlement approved as SDCL 62-4-34.1 had required.  However, Homestake insisted numerous times during the hearing that it did not file its claims within this time period because it believed filing would have merely been a âroad exerciseâ since its premature claims had previously been denied.
[Â¶23.]             During the 1999 legislative session, SDCL 62-4-34.7 was enacted.  It then provided:
Administration of the subsequent injury fund by the Division of Insurance and reimbursement of complete and valid claims shall continue until approved, denied, or settled.  Any claim for reimbursement from the subsequent injury fund shall be filed by June 30, 1999.  Only those claims timely filed with the division by June 30, 1999, pursuant to the requirements of Â§ 62-4-34.1 in effect prior to July 1, 1999, and completed by October 1, 1999, pursuant to the requirements set forth in Â§ 62-4-34.4 in effect prior to July 1, 1999, shall be eligible for reimbursement from the subsequent injury fund.  Any claim timely filed by June 30, 1999, and completed by October 1, 1999, as set forth in this section, shall be approved or denied by the division pursuant to the requirements of Â§Â§ 62-4-34 to 62-4-36.3, inclusive, in effect prior to July 1, 1999.  The division shall continue to make any necessary assessments pursuant to the requirements set forth in Â§ 62-4-35 in effect prior to July 1, 1999, until all eligible claims completed as set forth in this section that are approved by the division or determined by the court to be eligible for reimbursement are paid, and until all matters in litigation concerning the subsequent injury fund are resolved.  Any claim in matters being litigated concerning the subsequent injury fund is not eligible for interest or costs.  Any remaining balance in the fund after all obligations of the fund have been satisfied shall be deposited in the general fund.  Priority of payment shall be determined as of the date and time they are determined by the division to be complete and valid.  No claim against the subsequent injury fund is vested until it is complete as set forth in this section.  Any completed claim regardless of the date of injury or the date of notice of claim is subject to the two-thirds method of reimbursement pursuant to Â§ 62-4-34 in effect prior to July 1, 1999.  (emphasis added).
 
Session Laws 1999, ch 262, Â§ 1.  Clearly, repeal of SDCL 62-4-34.1 and promulgation of the above statute deprived Homestake of eligibility to claim reimbursement from the fund for injuries that were not âripeâ for filing prior to July 1, 1999, the effective date of these legislative actions.  
[Â¶24.] The circuit court found that a constitutional due process violation occurred because, although no claim against the subsequent injury fund had yet accrued, Homestakeâs rights to a remedy under applicable workersâ compensation law vested at the time of the injury.  South Dakota Subsequent Injury Fund, 2002 SD 34 at Â¶15, ___ NW2d at ___; Westergren v. Baptist Hosp. of Winner, 1996 SD 69, Â¶18, 549 NW2d 390, 395; Salmon, 72 SD at 118, 30 NW2d at 648.  The court did not rule that SDCL 62-4-34.7 in its entirety was unconstitutional as to Homestake, but only that portion requiring claims to be filed by June 30, 1999 and completed by October 1, 1999.  ââUnconstitutional provisions of a statute may be extracted and the remainder left intact.ââ  SD Educ. Assân v. Barnett, 1998 SD 84, Â¶32, 582 NW2d 386, 394 (quoting Simpson v. Tobin, 367 NW2d 757, 768 (SD 1985)). 
[Â¶25.] When a law is found unconstitutional, it is void from its inception and the prior law remains in effect. "âNo law can be changed or repealed by a subsequent act which is void because unconstitutional.â"  In re Certification of Questions (Knowles), 1996 SD 10, Â¶88, 544 NW2d 183, 204 (superseded by statute on other grounds as stated in Peterson ex rel. Peterson v. Burns, 2001 SD 126, Â¶37, 635 NW2d 556, 570) (quoting Frost v. Corp. Comm'n, 278 US 515, 527, 49 SCt 235, 240, 73 LEd 483, 491 (1929)); Weegar v. Bakeberg, 527 NW2d 676, 678 (SD 1995).  Therefore, the requirements provided by SDCL 62-4-34.1, requiring Homestake to file its claims against the fund within ninety days of their adjudication or approval by the Department still applied.  There is no dispute Homestake did not file its claims within this statutory period.
[Â¶26.] Homestake asserts that the 2001 amendment of SDCL 62-4-34.7 has retroactive effect and revives its claims.  This statute provides:
Administration of the subsequent injury fund by the Division of Insurance and reimbursement of complete and valid claims shall continue until approved, denied, or settled.  No claim for reimbursement from the subsequent injury fund may be filed based on a subsequent injury that occurs on or after July 1, 2001.  Any claim for reimbursement filed as set forth in this section shall be approved or denied by the division pursuant to the requirements of Â§Â§ 62-4-34 to 62-4-36.3, inclusive, in effect prior to July 1, 1999.  The division shall continue to make any necessary assessments pursuant to the requirements set forth in Â§ 62-4-35 in effect prior to July 1, 1999, until all eligible claims completed as set forth in this section that are approved by the division or determined by the court to be eligible for reimbursement are paid, and until all matters in litigation concerning the subsequent injury fund are resolved.  Any claim in matters being litigated concerning the subsequent injury fund is not eligible for interest or costs.  Any remaining balance in the fund after all obligations of the fund have been satisfied shall be deposited in the general fund.  Priority of payment shall be determined as of the date and time they are determined by the division to be complete and valid.  No claim against the subsequent injury fund is vested until it is complete as set forth in this section.  Any completed claim regardless of the date of injury or the date of notice of claim is subject to the two-thirds method of reimbursement pursuant to Â§ 62-4-34 in effect prior to July 1, 1999.  (emphasis added).
 
[Â¶27.] Homestake asked the circuit court to rule that on July 1, 2001, the date SDCL 62-4-34.7 was last amended, its statute of limitations period under 62-4-34.1 recommenced.  However, this is not possible under the law stated by Weegar and its precedent that when a statute is declared unconstitutional, the prior law remains in effect.  Id. at 678.  The statute of limitations of SDCL 62-4-34.1, as it was in effect at the time of the injuries, applied to Homestakeâs claims.  The limitations period commenced when the claims were either adjudicated or settlement approved by the Department and expired within ninety days of those dates.  After that period expired and Homestake had done nothing to preserve its claims within that time, no action by the state legislature would revive these claims. 
[Â¶28.] Moreover, â[s]tatutes which affect substantive rights are not given retroactive effect.â  State of Minnesota ex rel. Hove v. Doese, 501 NW2d 366, 369 (SD 1993).  The Hove Court cited West v. John Morrell & Co., 460 NW2d 745 (SD 1990) for this rule.  In West, a workersâ compensation case, a 1980 amendment to a statute changed the triggering date for a cause of action, thereby allowing an argument that the limitations period had been enlarged.  Essentially, on July 1, 1980, the employer, John Morrell & Co. became a respondent in a workersâ compensation claim that had previously expired under the statutes.  This Court held that the amendment to SDCL 62-7-35 had a "definite effect upon John Morrell's substantive rights in this case and cannot be retroactively applied under these facts."  Id. at 747.  
[Â¶29.] A Florida court addressed this issue involving its state fund for subsequent injury compensation and held that a statutory amendment extending the filing period for a claim to the fund could not be applied retroactively to resurrect a claim that was âextinguishedâ when the limitations period in effect at the time the claim should have been filed had run.  Special Disability Trust Fund v. Southern Bell Tel. & Tel. Co., 551 So2d 575 (FlaDistCtApp 1989).  The court stated:
âThe clear intent, and effect, is that the claim is barred . . . it is dead and no further act by ANYONE can breathe life into the right to claim reimbursement as to those benefits.â
 
Florida recognizes the general principle that where a statute creates a right of action that did not exist at common law and attaches thereto a time limitation with no exceptions, the claim is forever barred if not asserted within the time limit.
 
Id. at 576 (emphasis in original) (citation omitted).  Professor Larson has also stated this rule:
Finally, it may be noted that statutory amendments changing limitations periods are generally not applied retroactively, whether the effect of the change would be to improve or worsen the claimantâs position.
 
Larsonâs Workersâ Compensation Law, Â§ 126.13[5] (2000).
[Â¶30.] This is not a âhypertechnicalityâ as Homestake argued to this Court, nor does it concern a notice provision, as Homestake insists on referring to it.  This involves a statute of limitations period for filing a claim against the fund, as SDCL 62-4-34.4, in effect prior to July 1, 1999 but also repealed in the 1999 legislative session, then provided.[3]   âThe general purpose of statutes of limitations is to limit, not extend claimantsâ rights.â  Peterson, 2001 SD 126 at Â¶21, 635 NW2d at 564.
Amicus Curiaeâs Jurisdictional Claim
[Â¶31.] The Court granted permission to Dakota Truck Underwriters (DTU) to file an amicus curiae brief with this Court.  Rather than relying on the issues presented by the parties, its brief raised various issues and, among other things, argued that this Court lacks jurisdiction because the circuit court erred in granting a certificate under SDCL 15-6-54(b). 
[Â¶32.] DTUâs assertion was the subject of a Motion to Strike Brief filed by Fund.  We deferred ruling on the motion.  We now reiterate our earlier holdings that it is improper for amicus to seek to widen the issues raised by the parties.  Rapid City Educ. Assân v. Rapid City Sch. Dist. No. 51-4, 522 NW2d 494, 496 n5 (SD 1994); Lyons v. Lederle Lab., 440 NW2d 769, 770 (SD 1989).  The issues raised in the amicus brief were not presented to the circuit court, therefore will not be considered in this appeal.  However, jurisdictional deficiencies are addressed sua sponte, regardless of whether the parties raised the issue.  Schmidt v. Royer, 1998 SD 5, Â¶15, 574 NW2d 618, 622.  We will address the issue of the 54(b) certificate, finding it to be a jurisdictional issue.
[Â¶33.] Our jurisdiction, as a reviewing court, is limited to review of final judgments or orders, interlocutory orders by discretion of this Court, certain original proceedings and determination of questions certified by federal courts.  SDConst Art. V, Â§ 5; SDCL 15-26A-3; 15-25-1; 15-24A-1; 21-27-18.1.
[Â¶34.] DTU claims this action involves neither multiple parties nor claims, but only one claim with multiple theories and that the court abused its discretion in entering a judgment that included a 54(b) certificate.  SDCL 15-6-54(b) provides:
When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.  In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.  (emphasis added).
 
When multiple parties or claims are involved and a court determines issues involving only part of the claims or parties, the order or judgment lacks finality and is not appealable absent this express certification by the circuit court.  Siefkes v. Watertown Title Co., 413 NW2d 377 (SD 1987); Brasel v. City of Pierre, 87 SD 561, 211 NW2d 846 (1973). 
[Â¶35.] Although judgment in this case is entitled âPartial Summary Judgment and Declaratory Judgment,â it is a final order addressing all of the issues raised before the circuit court and leaves no issues undetermined.  The court gave Homestake every opportunity to explain at the hearing that it was narrowing its issues in the summary judgment motion and that it desired the court to rule on only two issues as compared with the multiple issues included in its complaint.  In its bench decision at the close of the hearing the court declared that â[t]he question today although entitled Motion for Summary Judgment is actually a motion for partial summary judgment.  I say that because during the course of the argument today counsel and the Court have narrowed the issues to be decided.â[4]   The courtâs order declares âthat this Summary Judgment shall serve as final Declaratory Judgment as regards the issues raised by the Motion for Partial Summary Judgment[.]â 
[Â¶36.] The 54(b) certificate language was likely included in the judgment due to the multiple issues Homestake originally pled in its complaint for declaratory judgment and the fact that those issues were narrowed throughout the proceedings by its motion for summary judgment and discussions with the court at the hearing. However, even if not necessary because there appear to be no claims left to be addressed, the 54(b) language would be surplusage.  Such surplusage does not deprive this Court of jurisdiction to consider an appeal from that judgment.  Western Bldg. Co. v. J.C. Penney Co., 60 SD 630, 245 NW 909 (1932).[5] 
[Â¶37.] We affirm.
[Â¶38.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, and GORS, Acting Justice, concur.
[Â¶39.] SABERS, Justice, dissents.
[Â¶40.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, and being the trial judge in this case, did not participate.
[Â¶41.] MILLER, Retired Justice, Acting By Appointment, for AMUNDSON, Justice, disqualified.
 
SABERS, Justice (dissenting).
 
[Â¶42.] I dissent.
[Â¶43.] Homestake has a vested right to pursue reimbursement from
Fund.  As the majority opinion states in paragraph 21:  âUnder our workersâ compensation statutes, Homestakeâs right to make these claims against the Fund vested at the time of the injuries.â  Gordon v. St. Maryâs Healthcare Center, 2000 SD 130, Â¶19, 617 NW2d 151, 156; Salmon v. Denhart Elevators, 72 SD 110, 118, 30 NW2d 644, 648 (1948).  
Rights and obligations of an interested party under the Workmenâs Compensation Law become vested at the date of a compensable accident, unless death results.  Until such time as an accident occurs the [L]egislature may change the scale of weekly or other benefits, but to make such a change after the accident occurs would impair the obligations of contracts.
Id.
[Â¶44.] The majority opinion also cites to South Dakota Subsequent Injury Fund v. Homestake Mining Company, 1999 SD 159, 603 NW2d 527, in footnote one, which sets forth the purpose of Fund.  
The SIF was created under South Dakota [workersâ] compensation law for the purpose of encouraging employers to âhire or retain disabled or handicapped workers.â  Those participating in the fund are entitled to be reimbursed from SIF for that portion of the disability sustained by the previously injured employee that occurred because of or was aggravated by the existence of a previous injury or physical condition.  The money within the fund comes from assessments made by the South Dakota Division of Insurance to [workersâ] compensation insurance carriers and self-insured employers.
 
Id. at Â¶14, 603 NW2d at 530 (internal citations omitted) (emphasis added).  
[Â¶45.] Homestakeâs rights against Fund vested before the Legislatureâs attempted repeal of Fund in 1999.  Homestake submitted its claims to Fund prior to June 30, 1999, thus making Fund aware that it intended to preserve its rights to reimbursement.  At all times, Fund knew of Homestakeâs claims.  It cannot claim ignorance or surprise at their existence.  Simply stated, Fund can claim no harm as a result of allowing Homestake to pursue reimbursement for its vested workersâ compensation claims.  
[Â¶46.] Moreover, the repeal of SDCL 62-4-34.1 during the 1999 Legislative Session and the 2001 enactment of SDCL 62-4-34.7 purported to bar Homestake from claiming reimbursement from Fund for its vested claims.  By prohibiting Homestake from seeking reimbursement for vested claims, from a fund which Homestake paid into, the Legislature negated the very purpose of Fund, which is to encourage employers to hire or retain disabled or handicapped workers and reimburse the employers if the employees suffer work-related injuries.
[Â¶47.] The Legislature should not be permitted to arbitrarily eliminate statutes under which these vested claims were created.  By condoning the Legislatureâs actions, the majority opinion is allowing the Legislature to deprive Homestake of its own money.  
[Â¶48.] At all times material herein, Fund was on notice of Homestakeâs claims.  Under Smith v. Neville, a unanimous opinion, Fund should be estopped from claiming otherwise.  539 NW2d 679 (SD 1995).  In Smith, a motorist, who was involved in a collision with a state snowplow, received a check from the stateâs claims adjuster for property damage.  Id. at 680-81.  The motorist then filed suit, seeking damages for personal injuries.  Id.  The State moved for summary judgment alleging that the motorist failed to provide timely notice to the State.  Id.  This Court determined that the Stateâs actions, specifically the adjusterâs act of sending the motorist a check, â[would have caused] an objectively reasonable person to believe that the proper authorities of the State had received notice and that nothing else was necessary on the part of the private citizen to have his claim processed.â  Id. at 682.  Accordingly, the State and its employee were estopped from claiming a defense of failure to timely notify in order to âprevent manifest injustice.â  Id. (citation omitted). 
[Â¶49.] In this case, an objectively reasonable person would not only believe, but know, that Fund was on notice of Homestakeâs claims.  In fact, it is undisputed that Fund knew.  To prevent manifest injustice, Fund should be estopped from now claiming that Homestakeâs vested claims are untimely.  We should reverse and remand to the trial court to decide these claims on their merits.  Anything short of that is robbing Homestake of its own money. 
 

[1].         We stated a brief explanation of the Fund and its purpose in South Dakota Subsequent Injury Fund v. Homestake Mining Co., 1999 SD 159, 603 NW2d 527:
The SIF was created under South Dakota worker's compensation law for the purpose of encouraging employers to âhire or retain disabled or handicapped workers.â  Sioux Falls School District v. South Dakota Subsequent Injury Fund, 504 NW2d 107, 107 (SD 1993); Oesterreich v. Canton-Inwood Hospital, 511 NW2d 824, 827 (SD 1994); Casualty Reciprocal Exchange, 1999 SD 2 at Â¶14, 589 NW2d at 206; See generally 5 Larson, Worker's Compensation Law, Â§ 91 (1999).  Those participating in the fund are entitled to be reimbursed from SIF for that portion of the disability sustained by the previously injured employee that occurred because of or was aggravated by the existence of a previous injury or physical condition.  SDCL 62-4-34.  The money within the fund comes from assessments made by the South Dakota Division of Insurance to worker's compensation insurance carriers and self-insured employers. SDCL 62-4-35.
 Id. at Â¶14, 603 NW2d at 530.  See also South Dakota Subsequent Injury Fund v. Heritage Mutual Ins. Co., 2002 SD 34, Â¶2, ___ NW2d ___.

[2].         House Bill 1208 laid the legislative groundwork for the amendment to SDCL 62-4-34.7 that became effective July 1, 2001. 

[3].         This statute identified SDCL 62-4-34.1 as a statute of limitations and provided what must be filed to complete the claim:
A claim is considered complete if it contains records, reports or any other evidence which shows the following:
(1)               The claim was filed with the appropriate agency within ninety days from the date a decision or approval of an agreement is obtained from the department;
(2)               The final decision or approved agreement from the department finding that the injury is an subsequent injury and is a compensable injury resulting in additional permanent partial or permanent total disability;
(3)               The total amount of compensation, medical and hospital expenses, paid to or on behalf of the employee by the employer if self insured, or the insurance carrier of an employer;
(4)               Reimursement requested by specific amount, and the calculations which justify the amount requested; 
(5)               Medical documentation specifically setting forth that the employee incurred any prior injury, compensable or noncompensable, which caused disability;
(6)               Medical documentation specifically setting forth the degree or percentage of disability attributable to any prior injury, and the reasons for arriving at those determinations;
(7)               Medical documentation specifically setting forth that the employee incurred a compensable subsequent injury which caused additional permanent partial or permanent total disability;
(8)               Medical documentation specifically setting forth the degree or percentage of disability reasonably attributable to the subsequent injury standing alone, as if no other injury had occured, and the reasons for arriving at those determinations.
(9)               Medical documentation specifically setting forth the degree or percentage of disability attributed to the combined injuries that also establishes tha the disability attributable to the combined injuries is substantially greater than the disability attributable to the subsequent injury standing alone, as if no other injury had occured, and the reasons for arriving at those determinations;
(10)               If the degree or percentage of disability attributable to the combined injuries is greater than the sum total of the degree or percentage of disability attributable to any prior injury standing alone and the subsequent injury standing alone, supporting medical documentation, including vocational rehabilitative evaluations and reports, if applicable and
(11)               Any other information deemed pertinent by the Division of Insurance during the course of its continuing investigation of the merits of the claim.
An incomplete claim is considered filed if filed within the ninety-day statute of limitations established in Â§ 62-4-34.1, but the thirty days for completion of the investigation of the claim does not begin to run until the claim is complete.  (emphasis added).

[4].         In fact, the courtâs last comments to the parties after providing its bench decision were:  â[t]hatâs a partial summary judgment.  I donât know if there are other issues left in this case or not frankly, but I presume youâll tell me later if there are.â  Attorney for Homestake responded, âyes, sir;â attorney for Fund responded, âokay.â  Nothing more, except for the motion to amend Homestakeâs complaint which was filed after this appeal and dismissed, has been filed in this action that would give any indication that any issues were left pending.  Homestake also filed a successful motion to supplement the record for appeal with copies of its June 25 and 29, 1999 letters to the Division of Insurance, making its premature claims regarding the three employees, and the Department of Laborâs order denying these claims.
 

[5].         In Western Bldg. Co., we explained:
What is denominated the judgment in this case must be deemed, as a matter of law, one or the other of two things.  It is either final judgment, in which event the language seeking to retain further jurisdiction of the cause should be regarded as mere surplusage and void and ineffective for any purpose, or it is not a judgment at all but merely an interlocutory order, in which event the record would have to be made and the appeal would have to progress in all respects as an appeal from an order and not as an appeal from a judgment.  It is apparent in this case that issue was joined upon proper pleadings, and trial was had and final judgment could and should have been entered. We deem it proper under the circumstances of this case, therefore, to treat the determination and direction of the trial court, although purporting to be interlocutory in form, as the final judgment in the cause and to disregard as ineffective for any purpose the portion thereof purporting to retain further jurisdiction in the matter.
Id. at 911.